LORINGS v. MARSH.

1. Where a testatrix having children, and grandchildren the issue of one of them, makes a will, in form, leaving the income of her property in trust equally between the children *for life* (saying nothing about the grandchildren), and afterwards to charities; and on the death of one of the children issueless, makes a codicil, distributing the income again among the surviving children *for life* (again saying nothing about the grandchildren), and the child having issue dies in the lifetime of the testatrix, leaving these, the grandchildren of the testatrix,—and the testatrix then dies,—the omission of such testatrix to provide for her grandchildren is to be taken (especially if parol proofs, admissible by the law of the State, aid such conclusion) to have been intentional and not to have been occasioned by any accident or mistake. Hence, the case will not come within the 25th section of chapter 92 of the Revised Statutes of Massachusetts (A.D. 1860), which provides for the issue of any deceased child or children, as in cases of intestacy, "unless it shall appear that such omission was intentional, and not occasioned by any accident or mistake."

2. Where two persons, as trustees, are invested by last will with the whole of a legal estate, and are to hold it in trust to "manage, invest and reinvest the same according to their best discretion," and pay over income during certain lives; and, on their efflux, these persons, or *their successors*, as trustees, are to select and appoint persons, who are to be informed of the facts by the trustees, and who are to distribute the capital among permanently established and incorporated institutions, for the benefit of the poor,—the power given to such two persons to select and appoint, is a power which will survive, and on the death of one in the lifetime of the testator, it may be properly executed by the other.

3. By the law of Massachusetts, as administered by her courts, in a devise to charitable institutions, in form such as just above indicated, the objects of the charity are made sufficiently certain. And, as the question of such certainty is to be determined by the local law of the State, any objection of uncertainty cannot be heard here

APPEAL from the Circuit Court for the District of Massachusetts.

The 25th section of chapter 92, of the Revised Statutes of Massachusetts, A. D. 1860,—a re-enactment, essentially of earlier statutes,—thus enacts:

"When any testator shall omit to provide in his will for any of his children, *or for the issue of any deceased child,* they shall take the same share of his estate, both real and personal, that they would have been entitled to, if he had died intestate, unless it shall have been provided for by the testator in his lifetime, or, *unless it shall appear that ,such omission was intentional, and not occasioned by any accident or mistake.*"

With this statute in force, Mrs. Loring made her last will. She had, living at this time, a son (Josiah), who had, living, three children, Mrs. Loring's grandchildren, of course; and two daughters, one married (Mrs. Cornelia Thompson), but not having issue, and the other single, Miss Abby Loring. By her last will, Mrs. Loring left the bulk of her estate to two persons, Marsh and Guild, of Boston—

"To have and to hold the same to them *and the survivor of them,* and their and *his* heirs and assigns forever, to their own use, but in trust, &c.; *to hold, manage, invest and re-invest* the same according to their best discretion; and to pay over one-third of the net income therefrom to my daughter, Abby, *during her life;* to pay over another third of said income to my daughter, Cornelia Thompson, *during her life;* and to pay over another third of said income to my son, Josiah, *during his life;* so that the said income shall go to *them personally,* and shall not be liable for their debts, or to the control of any other person; and upon the decease of my said children, severally, the shares of said income which they would continue to take if living shall be retained and invested by the trustees *until the decease of my last surviving child,* and shall then, with the principal, or trust fund, be disposed of for the benefit of the poor, in the manner hereinafter provided."

The will proceeded:

'It 's my wi'l that when, upon the decease of all my chil-

dren, the trust fund is to be disposed of as aforesaid, the said Marsh *and* Guild, or *their successors, as trustees,* shall select and appoint three or more gentlemen, who shall be informed of the facts by the trustees, and shall determine how, by the payments to permanently established and incorporated charitable institutions, my wish to benefit the poor will be best carried into effect, and my gift may be made most productive of benefit to the poor; and that thereupon the said trust fund shall be disposed of and paid over, in accordance with the determination of the said gentlemen, certified by them in writing, to the trustees."

The daughter, Mrs. Thompson, having died during the life of the testatrix, Mrs. Loring made a codicil to her will, which, after reciting the former disposition of the income, proceeded:

" I revoke so much of my will as provides for the said division of the said income, and its payment in three parts; and order and direct that the said income be paid, under the conditions and provisions in my said will contained, to my daughter, Abby, and my son, Josiah, they me surviving, in equal shares during their joint *lives,* and one-half thereof to the survivor of them, during his or her *life,* it being my intention that my said two children shall have the whole of the said income in equal shares during their joint *lives,* if they shall both survive me, and the survivor of them one-half of the said income *during his or her life.*"

*After* this codicil was made (the testatrix, however, yet living), the son, Josiah, died, leaving three children. Soon afterwards, July 16th, 1862, Guild, one of the trustees named in the will, died; and, last of all, about four months after this, Mrs. Loring herself. Guild, having thus died in the lifetime of the testatrix, Marsh, the surviving trustee, appointed the committee of three persons whom the testatrix had designated as the persons to determine the charitable institutions among whom her estate should go, and the committee named them.

Miss Abby Loring, the single daughter of the testatrix, having died soon after her mother, unmarried and intestate,

the three children of Josiah Loring, these being the sole heirs-at-law of Mrs. Loring, the testatrix, now filed their bill against Marsh and others, to have the estate, or their share of it.

The grounds of the claim as made here, and in the court below, were:

1. That the omission of Mrs. Loring was " unintentional, and occasioned by accident or mistake;" and the case so within the statute.

2. That the power conferred by the will upon the trustees, Marsh and Guild, to appoint persons to designate the objects of the testatrix's charity, had not been and could not, owing to the death of Guild, in Mrs. Loring's lifetime, be legally executed.

3. That the devise to the charitable uses was void, because, from defect of capacity to appoint, they were now uncertain and incapable of being ascertained.

In accordance with the law of Massachusetts,* oral evidence was taken on both sides as to the intention of Mrs. Loring to exclude her son's children. On the one hand there was the positive testimony of a girl or young woman, named Pratt, who stated that she had lived in Mrs. Loring's family for over seven years, as a "companion" to Mrs. Loring, but whose services, Mr. Thompson, the son-in-law of Mrs. Loring, testified were purely servile. This person, who the record showed had been called by Mrs. Loring as a witness to her will, testified that she had often, very often, heard Mrs. Loring say that her son's children should not derive any benefit from her estate after her death; that this was said both when the will and after the will and codicil were made; the cause being a dislike which she had of her son's wife's family. On the other hand there was testimony by the same son-in-law, that Mrs. Loring exhibited no dislike to her grandchildren, the complainants, and never expressed to him any intention of the sort above mentioned. But beyond this there was no attempt to impeach the testi-

---

* Wilson v. Fosket, 6 Metcalf, 400; Converse v. Wales, 4 Allen, 512.

mony of the first witness, and her character appeared to be fair.

The court below dismissed the bill.

*Messrs. B. R. Curtis and Cushing, with Hutchins and Wheeler, for the appellants:*

I. The first question is, whether the grandchildren are not entitled, by force of the statute, to the same share of Mrs. Loring's estate as they would have been had Mrs. Loring died intestate.

1. The *time* to which the question of omission applies is the time of Mrs. Loring's death. Not having then made any provision by her will, or any codicil for the issue of her deceased son, the case of the statute arises. She had made a will and left issue of a deceased child without having made any provision for them. *Bancroft* v. *Ives*,[*] is in point. That was the case of a son born after the making of the will, but it cannot be distinguished from the case of grandchildren, who became the issue of a deceased son, and so within the statute, by the death of their father after the making of the will. .

2. It does not appear that such omission *was* intentional, and *was not* occasioned by accident or mistake.

(*a*) The evidence of intention to disinherit an heir should be such as to leave no reasonable doubt of the existence of a formed and settled intention. The common law always favors the heir, and one of its well-known rules is that an heir cannot be disinherited, even by a will, unless there are express words or a necessary implication to that effect. *A fortiori,* where the disherison is to be effected by parol evidence of mere declarations of the testator.

(*b*) It is the office of such evidence to supply the omission of *a clause in the will* declaring the intention of the testator to disinherit the heir.[†] It is like the proof of the contents of a lost will by parol evidence, and the courts have held that this requires "the clearest and most stringent evidence."[‡]

[*] 3 Gray, 367.          [†] Wilson *v.* Fosket, 6 Metcalf, 400.
[‡] Davis *v.* Sigourney, 8 Id. 487.

If what was actually written, in a duly executed will, cannot be proved to disinherit the heir but by "*the clearest and most stringent evidence*," *à fortiori*, the heir cannot be disinherited by an intention never written at all, unless such intention shall be made out by this same evidence.

3. The true inquiry is this: Does it appear, by the clearest and most stringent evidence, that the testatrix had a formed and settled intention to disinherit the children *of her deceased son;* and that by reason of such intention they were not named in her will or its codicil?

(*a*) Looking at the will and codicil. The will was made plainly on the assumption that the son would survive the testatrix, and on no other. And the conduct of the testatrix when Mrs. Thompson died is in accordance with this; for when *she* died an alteration was made. But none when the son died: yet by the death of the father his children stood in a new position, and it is obligatory on the other side to show that in making her will the testatrix foresaw and meant to act in regard to this new position; a thing which cannot be shown.

(*b*) Then the oral testimony is insufficient to make a case for respondents.

The false account which the only important witness gives of her relation to Mrs. Loring; the great improbability that that lady would make a young servant girl the confidant of her settled intentions respecting her only grandchildren, which she imparted to no one else; the lapse of time; the infirmity and treachery of the human memory, even under favorable circumstances, as to mere casual declarations,— which so many rules of law are framed to guard against, and judicial experience recognizes,—all combine not only to deprive the testimony of this witness of the character of "the clearest and most stringent evidence," but to place it below the level of ordinary credibility. No member or connection of the family, no person standing in such a relation to the testatrix as to be likely to be the depositary of her serious and settled intentions respecting her only grandchildren, has been produced by the respondents. Her

son-in-law had no knowledge of an intention to disinherit them.

The testatrix executed a will and a codicil before the decease of her son. These were ambulatory, and whether she intentionally omitted the complainants from them is not material, as no case under the statute then existed. And an intention to disinherit either children born after the making of a will, or the issue of a child dying after the making of a will, cannot be proved by parol. It can be manifested only by making another will or codicil, *from which* the person is intentionally omitted.*

II. *As to the execution of the power.* Marsh alone could not execute it. This was not a power to appoint or select the donees of the property, nor to appoint the uses of the property. It was not a power over property. It was a naked authority, to nominate and appoint *persons*, who were to act for the testatrix in choosing the objects of her bounty, and to make known to them such facts as the two trustees should judge to be proper to guide or influence their judgment in the selection. From the nature of the case it must be a mere naked power, in contradistinction to a power coupled with an interest. A power coupled with an interest, means coupled with *an interest in the property which is the subject of the power;†* and where, as in this case, property is not the subject of the power, the power cannot be coupled with an interest.

A naked power to two persons by name, cannot be executed by one.‡

The intention of the testatrix to give this property to charitable institutions, was never perfected. She intended to speak only through persons selected and informed by both Marsh and Guild. There being no such persons, there is no expressed will of the testatrix in behalf of the institutions who are respondents.§

* Tucker *v.* Boston, 18 Pickering, 162.
† Hunt *v.* Rousmanier, 8 Wheaton, 174.
‡ Peter *v.* Beverly, 10 Peters, 564 ; 1 Sugden on Powers, 144.
§ Fontain *v.* Ravenel, 17 Howard, 369.

: III. The devise is void for uncertainty.  There being no mode, consistent with the will of the testatrix, of ascertaining the objects of her bounty, there is necessarily a resulting trust in favor of the complainants who are her heirs-at-law. The case will be rested on the other side on the power of acting *cy pres;* the power exercised by the Lord High Chancellor in England to make a will for a testator, simply because his will manifests some intention to make charitable bequests.  But this is not a *judicial* power, and does not exist in any court of Massachusetts.*  *Cy pres* is not a doctrine of jurisprudence at all; it is an exercise of sovereign power; and with us, where the three powers of government are kept distinct, cannot be exercised by courts.

*Messrs. S. Bartlett, F. C. Loring, and C. W. Loring, contra:*

I. The statute under which the first question in this case arises is, it is well known in Massachusetts, but a re-enactment of earlier statutes, and by an unbroken series of decisions the Supreme Court of the State has given a uniform exposition of the true intent of those earlier statutes.  This exposition is stated in *Wilder* v. *Goss,†* thus:

" Whenever it appears that the testator has, through forgetfulness or mistake, omitted to bestow anything upon his child or grandchild, the legislature wisely intended to effect that which it is highly reasonable to believe the testator, but for such forgetfulness, would himself have done.  To go further than this would be in its measure to defeat the principal intention of the legislature in the first section of the statute, which authorizes every person seized of an estate . . . . to devise the same as he shall think fit.  *Whenever, then, it may fairly be presumed from the tenor of the will, or any clause in it, that the testator intentionally omitted to give a legacy or make a devise to his child or grandchild* (whose parent is dead) *the court will not interfere.*"

This doctrine is reiterated down to the latest decision.

From the tenor of this will may it " fairly be presumed "

---

* Ommanney *v.* Butcher, 1 Turner & Russell, 260; Wheeler *v.* Smith, 9 Howard, 55; 17 Id. 386.

† 14 Massachusetts, 357.

that the testatrix intentionally omitted to give a legacy to her grandchildren?

1. These grandchildren were *in esse* at the execution of the will and codicil, as was also their father, for whom provision is made. It is not, therefore, the case of grandchildren born after the making of the will and before the death of testator, and so "forgotten" by her.

2. The cases are clear that where the gift is to grandchildren, omitting their parent, the mere statement that the grandchildren are the children of the son or daughter omitted, is conclusive that such son or daughter was not forgotten.[*] So here; the father is named and provided for by the will for life, to the exclusion of his *living* children.

3. The studied exclusion of these grandchildren, then alive, by the provision that the gift to the father should, upon his death, go over to charity, and this again repeated in the codicil executed the year following, would seem conclusive of the intent of the testatrix. *She must have anticipated the very event which has happened,* viz., that, in the course of nature, the appellants or some of them would survive their father; but, notwithstanding this, she bequeaths the remainder of the estate, given for life to their father, to charity. To use the language of Sedgwick, J., in *Terry* v. *Foster,*[†] " He had not forgotten them (grandchildren), he makes complete disposition of his property. This shows he did not intend they should come in for their portion."

The attempted answer of the appellants to this course of judicial decisions upon the statute is, that an intention to omit these grandchildren, in order to be legally effective, must be shown to have existed after the death of their father,—because it was only upon the happening of that event in the lifetime of testatrix that they become heirs apparent of the testatrix.

This proposition assumes that it is not possible by even express terms to manifest in a will an intention to exclude

---

[*] Wild *v.* Brewer, 2 Massachusetts, 570; Church *v.* Crocker, 3 Id. 17; Wilder *v.* Goss, 14 Id. 347.

[†] 1 Massachusetts, 146.

persons who may in future contingencies fill the relation of heirs of a testator. For if it be possible to manifest such intention in terms, then it is possible to do so by clear and just implication, and we thus come back to the question of what upon the authorities is to be deemed such just implication. Now in *Prentiss* v. *Prentiss,*\* a recent case, it is settled that a testator may by will exclude parties who in future contingencies will become his heirs. The will there excluded after-born children, and the plaintiff was subsequently born in the lifetime of his father, the testator. The court say :

"The sole inquiry is, whether it is sufficiently made to appear that such omission was intended and not occasioned by accident or mistake; all that is necessary to be shown is that the matter was in the mind of testator, and by him deliberately acted on."

The appellants' theory being thus unsound, the question again recurs, whether, having regard to the judicial decisions of Massachusetts, a will and a subsequent codicil giving to a son an estate for life, *excluding his then living children* from taking the remainder, but devising it over to charities, presents, as to such children, a case in which, because their father died before testator, to use the language of the court in *Goss* v. *Wilder,* "it is highly reasonable to believe that the testator but for forgetfulness" would have given them the inheritance, or a case of intended exclusion ?—and it is submitted by us that it leaves nothing for doubt.

Some reliance is placed on that which is but a *dictum* of Shaw, C. J., in *Bancroft* v. *Ives,* that the "time to which the *question of omission* applies is the time of testator's decease." This was said in a case where the sole question was, whether children born after the making of a will should inherit, there being children alive when the will was made; and it was in answer to the argument that intention to omit should be construed to apply only to children in existence. Doubtless it is true that *actual omission* is only determined by the state of things at testator's death, but the *intention to omit,*

---

\* 11 Allen, 47.

as to parties alive, may be expressed by a will whensoever made.

The oral evidence of the actual intent of testatrix that these grandchildren should in no event share in her estate, is too strong to be disposed of in the way attempted on the other side.   That evidence is unimpeached.

But the appellants object that the oral evidence, to be admissible, must be confined to declarations of testatrix after they become, by the death of their father, her heirs apparent; that the intention of testatrix must be shown as it existed after this change of condition, and that this subsequent intention can only be shown by a new will and not by oral declarations.   The error of this position is, that it assumes that the testatrix could not by law, at the time she made her will, have foreseen this most natural and probable event, and have intended to provide for it by omitting these grandchildren and giving her estate to charities, and that, having this intention, as she may not have explained in her will the purpose of omitting them, her declarations of its being intentional is inadmissible.   It proceeds on the ground that testatrix could by law have no such intent until after the event happened which made the grandchildren heirs apparent, for if she could, then her oral declarations of such intention are clearly admissible within the settled rule.

In view of the case of *Prentiss* v. *Prentiss,* it is unnecessary to again discuss the question whether the testatrix might not by law foresee and provide for the exclusion of future heirs, and, if this be lawful, then her oral declarations of intent to do so are as admissible as they would be in any case where the omission in a will to provide for an heir is, by the settled rule, open to explanation by such testimony.   The principle, as stated in that case, shows that the intent to exclude future heirs needs no express provision in a will.

It is said by appellants that the oral testimony, if not confined to declarations after the death of the father, must be restricted to declarations of intention existing when the will was made.   This is hardly accurate, since testimony of de

clared intention before the will was made, as well as after, is clearly admissible.*

II. *As to the execution of the power.* If this were a case of a naked power (which it is not), and if the object of this gift were not (as it is) a public charity, but the property had been directed to be distributed among individuals to be selected from the public at large in the mode provided by the will, yet the power might be well executed by the surviving trustee, since the gift in trust is to "Marsh and Guild, and the survivor of them." And although this phraseology is not repeated in the clause as to the selection "of three or more gentlemen," yet such is the necessary legal implication. Again, the terms are, "said Marsh and Guild, or their successors as trustees, shall select," and this settles conclusively that it is not a "personal trust" in the parties named, but a trust *virtute officii*, and then, by the terms of the trust and by law, the power remains to the survivor.

Again (aside from the fact that this is a gift to charity), if its purpose was to benefit individuals, and if there were no words of survivorship, and the power was joint and personal to Marsh and Guild, it is submitted that it *is a power in nature of a trust*, and the court would require its execution by the survivor.† But here the trustees were seized and possessed of the property, and the power to be exercised was not a naked one, but incident to and coupled with the disposition by them of their title in the trust property. It was a power coupled with an interest, and that disposes of the question.‡

It is said by the appellants, that the power in question was not to dispose of property, but to select others according to whose direction the property was to be disposed of, and that such a power cannot be one coupled with an interest, but must be a mere naked power. If the title had not been vested in these trustees, but had remained in the heirs-at-law, perhaps the appellants' position would be true. But the fact

---

\* Bancroft *v.* Ives ; Converse *v.* Wales.

† 2 Sugden on Powers, 3d Am. Ed., 158 (143); Fontain *v.* Ravenel, 17 Howard, 369, 386.

‡ Peter *v.* Beverly, 10 Peters, 532.

that it was thus vested, brings the case directly within the definition of a power coupled with an interest, and it is none the less so by reason of the fact that the power coupled with this interest is to select others to designate the object, as well as to convey the estate to the objects thus designated.

III. But if this were otherwise, yet this is a gift to charity, which is never allowed to fail.

" Where there is a general intention shown by the donor to give to charity, the failure of the particular mode in which the charity is to be effectuated will not destroy the charity. The law will substitute another mode of devoting the property to charitable purposes, though the formal intention as to the mode cannot be accomplished. *This principle of construction, it will be observed, differs entirely from that applicable to a bequest to individuals, when on failure of the mode the gift fails altogether.*"*

Again:

" The same will follow when a testator, after making a bequest to such charitable uses as his executor shall appoint, revokes the appointment of the executor, or the executor himself renounces probate, or when the testator, after making a bequest to said charitable uses as A. shall appoint, A. *dies in the lifetime of the testator* or neglects or refuses to make an appointment."†

The above are the settled doctrines of courts of equity in England, in carrying into effect the statute of Elizabeth. This statute *is fully administered* as part of the common law of Massachusetts,‡ and it has been recently decided by its highest tribunal, that where the charitable gift is devised to trustees, the court will not allow it to fail, but apply, if necessary, the *cy pres* doctrine.§

---

* Tudor on Charities, 212.                    † Id. 216.

‡ Hadley *v.* Hopkins Academy, 14 Pickering, 253, 262; Going *v.* Emery, 16 Id. 114; Sanderson *v.* White, 18 Id. 328; Burbank *v.* Whitney, 24 Id. 146 ; Bartlett *v.* Nye, 4 Metcalf, 378; Washburn *v.* Sewall, 9 Id. 280; Sohier *v.* St. Paul's Church, 12 Id. 250; Brown *v.* Kelsey, 2 Cushing, 243; Winslow *v.* Cummings, 3 Id. 358; Bliss *v.* Am. Bible Society, 2 Allen, 334.

§ Jackson's Executors *v.* Phillips et al., Jan., 1867.

Mr. Justice NELSON delivered the opinion of the court.

The first question in the case arises on the following provision of a statute of the State of Massachusetts: "When any testator shall omit to provide in his will for any of his children, or for the issue of any deceased child, they shall take the same share of his estate, both real and personal, that they would have been entitled to, if he had died intestate, unless it shall have been provided for by the testator in his lifetime, or, *unless it shall appear that such omission was intentional, and not occasioned by any accident or mistake.*" As it is admitted that no provision was made by the testatrix in her lifetime for the issue of the deceased son, the question turns on the remaining clause of the statute; and, so far as regards an examination of it with reference to the terms of the will, depends on facts, which may be stated as follows: At the date of the will, in which a life estate was given to the son, his children were living, but were not noticed therein by the testatrix, nor in the codicil of the 14th July, the year following, in which the life income of the son was increased.

There is, therefore, an entire omission to make any provision for the issue, or, even to notice them in the will, which brings the complainants directly within the enacting clause of this statute, and entitles them to a share of the estate the same as if the testatrix had died intestate, unless, in the language of the act, "it shall appear that such omission was intentional, and not occasioned by any accident or mistake." Whether or not the omission was intentional, or by mistake, may be ascertained from a careful perusal of the terms of the will, or by parol. This is the settled construction of the statute by several decisions in the courts of Massachusetts, where, it is said, that whenever it appears the testator has, through forgetfulness or mistake, omitted to bestow anything upon the child or grandchild, the legislature intended to effect that which it is highly reasonable to believe, but for such forgetfulness, he would, himself, have done. And, speaking of an examination of the will as bearing upon the subject, it is observed, that whenever it may fairly be pre-

sumed from the tenor of the will, or from any clause in it, that the testator intentionally omitted to give a legacy, or make a devise to a child or grandchild (whose parent is dead), the court will not interfere.

In the present case it is claimed, that by a perusal of the will, or by the parol proof, or both, it satisfactorily appears, that the omission by the testatrix was intentional, so as to cut off the grandchildren, the complainants.

The grounds upon which this is urged on the part of defendants are—

(1) That the grandchildren were living at the time of the execution of the will, and of the codicil, as was also their father, for whom particular provision was made out of the estate. It is insisted that the testatrix, in settling upon the portion thus devised to the father on both of these occasions, must have had present to her mind the grandchildren; that it is not natural, or reasonable to suppose, she could, on each of them, have deliberately and solemnly made provision for the father, without taking into consideration the state and condition of his family, which then consisted of his wife and the three grandchildren, and, in confirmation of this view, cases are referred to where the gift was to the grandchildren, omitting the parent, and the mere statement in the will that the grandchildren were the children of the son or daughter omitted, was held conclusive that the son or daughter was not forgotten, but intentionally omitted—such as a gift "to the children of her son Edward"—or "to grandchildren of his daughter Sarah."*

(2) The studied exclusion of the grandchildren, then living, by limiting the provision made for the father to a life estate, and, at his death, giving it over to charitable uses— and repeating the same limitation in the following year on the execution of the codicil. In view of these circumstances, and this posture of the case, it is insisted that the testatrix must have had called to her mind the children of the son, and also the further fact, that, in the ordinary course of

---

* Church *v.* Crocker, 3 Massachusetts, 17; Wild *v.* Brewer, 2 Id 570. Wilder *v.* Goss, 14 Id. 357.

nature, the children, or some of them, would survive the father; notwithstanding all which, she limited the provision for the father to a life estate, and devised the remainder over from the children.

It has been argued that the time to which the question of omission has reference, is the time of Mrs. Loring's decease. This, in a general sense, may be true, because, till then, it was possible for her to make provision in a codicil, or by a new will, for the grandchildren. It could not, therefore, be absolutely known before her decease that such provision would not be made. But, whether the omission was intentional, or by mistake, is not confined to this period; on the contrary, when the question is answered from a perusal of the will, it is necessarily limited to the time of its execution. And, even when it depends on oral proof, that proof is received for the purpose of ascertaining the mind of the testatrix at the same period. For, it is the state of her mind at the time of the execution, generally speaking, that is to be looked to, in the contemplation of the statute, with a view to determine whether the omission was intentional, or by mistake.

This case has been likened, in the argument, to that of a child born after the making of the will, because the grandchildren only became the issue of a deceased son after the death of their father, and which occurred subsequent to the execution of the will and codicil. Whether this be so or not, cannot change the aspect of the case, or the principles that must govern it.

Undoubtedly, in the case of a son born after the making of the will, and before the death of the father, the omission to provide for him cannot be known till the death of the father, for, till then, it was competent for him to make the suitable provision. This was the case of *Bancroft* v. *Ives.** But, even in that case, it was conceded to be competent for the adverse party to prove that the omission was intentional, and evidence was received and examined on the point. It

---

* 3 Gray, 367.

was held to be insufficient for the purpose.   But, in tLc case of *Prentiss* v. *Prentiss*,* it was held, that a child born after the will, and before the decease of the father, was intentionally omitted; as appeared plainly on the face of the instrument.   It is, doubtless, more difficult to establish that the omission was intentional, in the case of children born after the will, than if born before, and living at its date. But it would seem from the course of decisions that this is the only distinction, if it be one, in the statute.

Our conclusion on this branch of the case is, that upon a perusal of the provisions of the will, regard being had to the course of decision under the statute in the courts of the State, it sufficiently appears, especially in connection with the oral proof, that the omission to provide for the issue of the deceased son in the will was intentional, and not by accident or mistake.

The next question in the case is, whether or not the power conferred by the testatrix upon the trustees, L. H. Marsh and S. E. Guild, to appoint three or more persons to designate the objects of her charities under the will, has been legally executed.

It is insisted, on the part of the complainants, that the power of appointment is a naked authority to appoint persons who were to act for the testatrix in choosing the objects of her bounty, and to make known to them such facts as the two trustees should deem proper to guide or influence them in the selection; that it was a personal power which looked to the merit and qualification of the individuals for the discharge of the particular duty; and, that being a naked power, the survivor was incompetent to execute it.

If the premises are well founded the conclusion is undeniable.†

We are satisfied, however, that this is a mistaken view of the authority conferred on the trustees.   They were in-

---

* 11 Allen, 47.

† Peter *v.* Beverly, 10 Peters, 564; 2 Story's Equity, § 1062, and cases.

vested with the whole of the legal estate, and were to hold
the same in trust to " manage, invest and reinvest the same
according to their best discretion," and pay over the in-
come to the three children of the testatrix during their
lives; and, on their decease, the said Marsh and Guild, or
*their successors*, as trustees, shall select and appoint the three
persons, &c., and thereupon the said trust fund shall be dis-
posed of and paid over in accordance with the determina-
tion of the said persons, as certified by them in writing.
And then direction is given in the will to the trustees to sell
and convey any and all the real estate which may be in their
hands, at their discretion, for the benefit of the charities.

Now, it is quite clear, from this reference to the will, that
the trust conferred upon Marsh and Guild could not have
been intended as a personal trust looking to the fitness of
the donees of the power, as it is conferred upon them and
their successors; and, as the execution of the trust for char-
itable uses was postponed by the terms of the will until after
the decease of the three children of the testatrix, it was nat-
ural and reasonable to have supposed that it would not take
place in the lifetime of the trustees named, but would de-
scend to their successors.

But what is more decisive of the question is, that inas-
much as the trustees are invested with the legal estate, in
order to enable them to discharge the various trusts de-
clared, it is well settled that the power conferred is a power
coupled with an interest, which survives, on the death of one
of them, and may be executed by the survivor. (See the
authorities above referred to.)    It is not necessary that the
trustees should have a personal interest in the trust; it is
the possession of the legal estate, or a right *virtute officii* in
the subject over which the power is to be exercised, that
makes an interest, which, when coupled with the power, the
latter survives.    A trust, therefore, will survive when in no
way beneficial to the trustee.

We have said the trustees were invested with the legal
estate for the purpose of enabling them to perform the vari-
ous trusts devolved, such as managing the estate, investing

and reinvesting the funds belonging to it, paying over the income to the children during their lives, converting the real estate into personal, and, among others, the selection and appointment of the committee of gentlemen who were to designate the donees of the charity. This was one of the incidental trusts or duties devolved upon them by the testatrix, as trustees of the estate, upon whom she had conferred such large powers over it, and which, on the death of Guild, survived with the other trusts to the co-trustee. No well-grounded distinction can be made between these trusts. If the power survives as to one of them it survives as to all, as it is apparent on the face of the will that the trustees were to act in the same capacity in the execution of all of them.

As it respects this devise to charitable' institutions there can be no doubt upon the law of Massachusetts, as habitually administered in her courts, but that the objects of the bounty are made sufficiently certain by the mode pointed out in the will; and as the question is to be determined by the local law of the State there is an end of the objection.

DECREE AFFIRMED.