## JONES *v.* HABERSHAM.

1. In a will containing many legacies, bequests, and devises, each present and immediate in form, to individuals and to charitable institutions, a clause expressing a wish and direction that none of the legacies, bequests, or devises "shall be executed or take effect until " a certain memorial hall (in fact nearly finished at the time of the execution of the will and of the testator's death) on land previously conveyed by the testator in trust, "shall be completed and entirely paid for out of my estate," does not suspend the vesting, but only the payment and carrying out of the various legacies, bequests, and devises.

2. Section 2419 of the Code of Georgia of 1873 does not invalidate a charitable devise contained in a will executed within ninety days before the testator's death, unless he leaves a wife or child or descendants of a child.

3. The validity of a charitable devise as against the heir at law depends upon the law of the State where the land lies.

4. The validity of a charitable bequest as against the next of kin depends upon the law of the State of the testator's domicile.

5. The law of charities is fully adopted in Georgia, as far as is compatible with a free government where no royal prerogative is exercised.

6. A parcel of land, with buildings thereon, was devised to the trustees of the Independent Presbyterian Church in Savannah, an incorporated religious society, "upon the following terms and conditions, and not otherwise:" 1st. That the trustees should appropriate annually out of the rents and profits the sum of $1,000 "to one or more Presbyterian or Congregational Churches in the State of Georgia in such destitute and needy localities as the proper officers of said Independent Presbyterian Church may select, so as to promote the cause of religion among the poor and feeble churches of the State." 2d. That the trustees should not materially alter the pulpit or galleries of the present church edifice, or sell the lot on which the Sabbath-school room of the church stood. 3d. That the trustees should keep in order the burial place of the testator, which he devised to them for that purpose. *Held,* that under the Code of Georgia of 1873, sect. 3157, the charitable purposes named in the first and third conditions were good charitable uses, sufficiently defined; that the trustees were capable of taking the devise, and that its validity was not impaired by the conditions subsequent.

7. A devise to a society incorporated "for the relief of distressed widows and the schooling and maintaining of poor children," of buildings and land, to "use and appropriate the rents and profits for the support of the school and charities of said institution, without said lot being at any time liable for the debts or contracts of said society," is a good charitable devise.

8. A devise to a society incorporated "for the relief of indigent widows and orphans in the city of Savannah," of buildings and land, "the rents and profits to be appropriated to the benevolent purposes of said society," is a good charitable devise.

9. The rule against perpetuities does not apply to charities; and if a devise 'is made to one charity in the first instance, and then over, upon a contingency

which may not take place within the limit of that rule, to another charity, the limitation over to the second charity is good.

10. Restrictions imposed by the charter of a corporation upon the amount of property that it may hold cannot be taken advantage of collaterally by private persons, but only in a direct proceeding by the State.

11. The provision of the Constitution of Georgia of 1868, which declares that "the General Assembly shall have no power to grant corporate powers and privileges to private companies" (with certain exceptions), "but it shall prescribe by law the manner in which such powers shall be exercised by the courts," does not take away from the General Assembly the power to amend the charters of existing corporations by modifying or enlarging their powers.

12. A devise to a historical society of a house containing a collection of books, documents, and works of art, in trust to keep and preserve the same, with the collection therein, and other books and works of art to be purchased by the officers of the society out of the income of a fund bequeathed by the devisor for the purpose, "as a public edifice for a library and academy of arts and sciences," and "to be open for the use of the public" on such terms and under such reasonable regulations as the society may prescribe, is a good charitable devise, and is not invalidated by a requirement to place and keep over the entrance a marble slab with the name of the testator engraved thereon; and if the society is incapable of executing the trust, a court of equity, in the exercise of its ordinary jurisdiction, and under sect. 3195 of the Code of Georgia of 1873 may appoint a new trustee.

13. A devise and bequest in trust for the building, endowment, and maintenance of "a hospital for females within the city of Savannah, on a permanent basis, into which sick and indigent females are to be admitted and cared for in such manner and on such terms as may be defined and prescribed by" certain directresses named and their associates, who are to obtain an act of incorporation for the purpose, is a valid charitable devise and bequest, although no time is limited for the erection of the building or the obtaining of the charter.

14. A bequest "to the first Christian church erected or to be erected in the village of Telfairville in Burke County, or to such persons as may become trustees of the same," is a good charitable bequest.

APPEAL from the Circuit Court of the United States for the Southern District of Georgia.

The case is fully stated in the opinion of the court.

The case was argued by *Mr. William W. Montgomery* for the appellants, and by *Mr. Alexander R. Lawton* and *Mr. Walter S. Chisholm*, with whom was *Mr. Charles C. Jones, Jr.*, for the appellees.

MR. JUSTICE GRAY delivered the opinion of the court.

This is a bill in equity, by the heirs at law and next of kin of Miss Mary Telfair of Savannah, against the executors of her

will and the devisees and legatees named therein, to have the devises and bequests adjudged void and a resulting trust declared in favor of the plaintiffs. The will, which was executed the day before the testatrix died, and was afterwards admitted to probate in the court of appropriate jurisdiction of the State of Georgia, disposed of property amounting to more than $650,000, contained many devises and bequests to individuals and to charitable objects, and appointed the executors of the will trustees under its provisions. The defendants filed a general demurrer. The opinion delivered by Mr. Justice Bradley in the Circuit Court, sustaining the demurrer and dismissing the bill, is reported in 3 Woods, 443.

The plaintiffs, in the first place, contend that by the twenty-second clause of the will all the devises and bequests, as well those to private persons as those for charitable purposes, are brought within the rule against perpetuities, by which every devise or bequest is void which may by possibility not take effect within a life or lives in being and twenty-one years afterwards. That clause is as follows : —

" Twenty-second. It is my wish, and I hereby so direct, that none of the legacies, bequests, and devises in any of the clauses of this my will shall be executed or take effect until the building and other improvements on the lot on the corner of Gaston and Whittaker Streets, and known as the Hodgson Memorial Hall, which I have conveyed in trust to the Georgia Historical Society, shall be completed and entirely paid for out of my estate."

The bill, which was filed nearly four years after the death of the testatrix, alleges, and the demurrer admits, that the building and other improvements referred to were in course of construction at the time of her death, but were not completed until many months thereafter, but whether they were yet entirely paid for the plaintiffs were not certainly informed, and that, if not paid for, it was the only debt known to them, now existing against the estate.

Reading the twenty-second clause in connection with the other parts of the will, and in the light of the attending facts, it is quite clear that the words " take effect " are used by the testatrix as synonymous with or equivalent to the word " exe-

cuted," with which they are coupled, and not as signifying that the devises and bequests shall not vest immediately, but only that they shall not be paid or carried out until the debt contracted by the testatrix for the construction of the Hodgson Memorial Hall shall have been paid out of her estate. Each devise and bequest is present and immediate in form, introduced by the words " I give, devise, and bequeath." The bill shows that the building and improvements referred to were, at the time of the death of the testatrix, in the course of construction, and so far advanced that they were actually completed within some months afterwards, so that the probable cost must have been capable of estimation at the time of the making of the will. The twenty-second clause is but a declaration of what the law would require, that the debt of the testatrix for the construction of the memorial hall must be first paid out of her estate before her devisees and legatees receive any benefit therefrom.

The next objection, which touches all the devises to charitable purposes, is based on the following provision of the Code of Georgia of 1873 : —

" SECT. 2419. No person leaving a wife or child, or descendants of child, shall by will devise more than one-third of his estate to any charitable, religious, educational, or civil institution, to the exclusion of such wife or child; and in all cases the will containing such devise shall be executed at least ninety days before the death of the testator, or such devise shall be void."

The plaintiffs contend that the latter part of this section applies to every will containing a charitable devise, whether the testator does or does not leave a wife or child or the descendants of a child; and that therefore, although this testatrix left no issue and had never been married, yet the will having been executed less than ninety days before her death, the charitable devises contained therein are void.

In support of this position reference is made to cases in the courts of New York and Pennsylvania. *Harris* v. *Slaght*, 46 Barb. (N. Y.) 470; s. c. nom. *Harris* v. *American Bible Society*, 2 Abbott, App. Dec. (N. Y.) 316; *Lefevre* v. *Lefevre*, 59 N. Y. 434; *Price* v. *Maxwell*, 28 Pa. St. 23; *McLean* v.

*Wade*, 41 id. 266 ; *Miller* v. *Porter*, 53 id. 292 ; *Rhymer's Appeal*, 93 id. 142.   But the statutes under which those cases were decided were quite different from that of Georgia.

The enactment in New York formed part of an act for the incorporation of charitable societies, and is as follows : "Any corporation formed under this act shall be capable of taking, holding, or receiving any property, real or personal, by virtue of any devise or bequest contained in any last will or testament of any person whatsoever, the clear annual income of which devise or bequest shall not exceed the sum of ten thousand dollars : *Provided*, no person leaving a wife, or child, or parent, shall devise or bequeath to such institution or corporation more than one-fourth of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of such one-fourth ; and no such devise or bequest shall be valid in any will which shall not have been made and executed at least two months before the death of the testator." Statute of N. Y. of 1848, c. 319, sect. 6 ; 2 N. Y. Rev. Stat. (ed. 1859), c. 18, tit. 7, sect. 6.  The leading clause of that section, to which the last clause of the same section was held to relate, and which is wholly omitted in the Georgia statute, spoke of devises and bequests to charitable corporations "contained in any last will or testament of any person whatsoever."

The provision of the corresponding statute of Pennsylvania was still plainer ; for it did not mention wife or child at all, but enacted in the most positive words that " no estate, real or personal, shall hereafter be bequeathed, devised, or conveyed to any body politic, or to any person, in trust for religious or charitable uses, except the same be done by deed or will, attested by two credible, and, at the time, disinterested witnesses, at least one calendar month before the decease of the testator or alienor ; and all dispositions of property contrary hereto shall be void, and go to the residuary legatee or devisee, next of kin or heirs, according to law : *Provided*, that every disposition of property within said period, *bona fide* made for a fair valuable consideration, shall not be hereby avoided." Statute of Penn. of 1855, c. 347, sect. 11 ; Purdon's Digest (10th ed.), 208.

But in the provision on which the appellants rely, which is inserted in the chapter on wills of the Code of Georgia, and is the only provision as to charitable devises contained in that chapter; the leading clause is limited to the will of a person, leaving a wife or child or descendants of a child, containing a devise to a charitable institution to the exclusion of such wife or child; and the words in the subsequent clause, " in all cases the will containing such devise," naturally, if not necessarily, refer to a will containing a devise to such an institution by a person leaving a wife or issue. The provision has been so construed by the Supreme Court of Georgia in a case decided in 1867, and again in 1878 in the case of this very will. *Reynolds* v. *Bristow*, 37 Ga. 283 ; *Wetter* v. *Habersham*, 60 id. 193, 194, 203. It is suggested by the learned counsel for the appellants that what was said upon this point in each of those cases was *obiter dictum*, because the question at issue was not of the construction or effect of the will, but only whether it should be admitted to probate. But the reports clearly show that the court considered that the question whether the will was illegal and void, so far as regarded the charitable devises, because in contravention of this statute, was presented for adjudication upon the offer of the whole will for probate.

The separate objections taken to the several charitable devises and bequests remain to be considered.

According to the uniform course of the decisions of this court, the validity of these devises, as against the heirs at law, depends upon the law of the State in which the lands lie, and the validity of the bequests, as against the next of kin, upon the law of the State in which the testatrix had her domicile. *Vidal* v. *Girard*, 2 How. 127 ; *Wheeler* v. *Smith*, 9 id. 55 ; *McDonogh* v. *Murdoch*, 15 id. 367 ; *Fontain* v. *Ravenel*, 17 id. 369, 384, 394; *Perin* v. *Carey*, 24 id. 465; *Lorings* v. *Marsh*, 6 Wall. 337 ; *United States* v. *Fox*, 94 U. S. 315 ; *Kain* v. *Gibboney*, 101 id. 362 ; *Russell* v. *Allen, ante*, p. 163.

The Code of Georgia of 1873 contains the following provisions on the subject of charitable uses : —

" SECT. 2468. A devise or bequest to a charitable use will be sustained and carried out in this State ; and in all cases where there is a general intention manifested by the testator to effect a cer-

tain purpose, and the particular mode in which he directs it to be done fails from any cause, a court of chancery may, by approximation, effectuate the purpose in a manner most similar to that indicated by the testator."

"SECT. 3155. Equity has jurisdiction to carry into effect the charitable bequest of a testator, or founder, or donor, where the same are definite and specific in their objects, and capable of being executed.

"SECT. 3156. If the specific mode of execution be for any cause impossible, and the charitable intent be still manifest and definite, the court may, by approximation, give effect in a manner next most consonant with the specific mode prescribed.

"SECT. 3157. The following subjects are proper matters of charity for the jurisdiction of equity: 1. The relief of aged, impotent, diseased, or poor people. 2. Every educational purpose. 3. Provisions for religious instruction or worship. 4. For the construction or repair of public works, or highways, or other public conveniences. 5. The promotion of any craft or persons engaging therein. 6. For the redemption or relief of prisoners or captives. 7. For the improvement or repair of burying-grounds or tombstones. 8. Other similar subjects, having for their object the relief of human suffering or the promotion of human civilization.

"SECT. 3158. A charity once inaugurated is always subject to the supervision and direction of a court of equity, to render effectual its purpose and object."

These provisions were evidently enacted to clear up the doubts created by previous conflicting decisions and opinions of the Supreme Court of Georgia. *Beall* v. *Fox*, 4 Ga. 404; *American Colonization Society* v. *Gartrell*, 23 id. 448; *Walker* v. *Walker*, 25 id. 420; *Beall* v. *Drane*, id. 430. They show, as was well observed by Mr. Justice Bradley in the Circuit Court, " that the law of charities is fully adopted in Georgia, as far as is compatible with a free government where no royal prerogative is exercised." 3 Woods, 469. And such has been the construction given to the corresponding sections of the Code of 1865 by the Supreme Court of the State in a well-considered judgment, in which it was held that charitable bequests, the general objects of which the testator had pointed out, or fixed any means for pointing out, were sufficiently " definite and specific in their objects, and capable of being executed,"

under the provisions of the Code and the ordinary jurisdiction of courts of chancery.; and, therefore, that a bequest to a county court of a sum of money to be placed in the hands of four men, who were to give security, and lend out the principal, and pay over the interest annually to that court, "to pay for the education of poor children belonging to the county," was a good charitable bequest. *Newson* v. *Starke*, 46 Ga. 88.

In the will before us, the first of the devises to charitable uses is as follows: —

"Tenth. I hereby give, devise, and bequeath to the Trustees of the Independent Presbyterian Church of the City of Savannah all that full lot of land in the City of Savannah on the southwest corner of Broughton and Bull Streets, with the buildings and improvements thereon, to have and to hold the same on the following terms and conditions, and not otherwise, to wit: First. That the Trustees of the said Independent Church shall appropriate annually, out of the rents and profits of said lot and improvements, the sum of one thousand dollars to one or more Presbyterian or Congregational Churches in the State of Georgia, in such destitute and needy localities as the proper officers of said Independent Presbyterian Church may select, so as to promote the cause of religion among the poor and feeble churches of the State. Second. This gift and devise is made on the further condition that neither the trustees nor any other officer of said Independent Presbyterian Church will have or authorize any material alteration or change made in the pulpit or galleries of the present church edifice on the corner of Bull and South Broad Streets, but will permit the same to remain substantially as they are, subject only to proper repairs and improvements; nor shall they sell or alien the lot on which the Sabbath school-room of said church now stands, but shall hold the same to be improved in such manner as the trustees or pew-holders may direct. Third. Upon the further condition that the Trustees of said Independent Presbyterian Church will keep in good order, and have thoroughly cleaned up every spring and autumn, my lot in the cemetery of Bonaventure, and that no interment or burial of any person shall ever take place either in the vault or within the enclosure of said lot; and for the purpose of having the same protected and cared for, I hereby give, devise, and bequeath my said lot in the Bonaventure Cemetery to the Trustees of the Independent Presbyterian Church and their successors."

The act of the legislature of Georgia of the 8th of December, 1806, incorporating the Trustees of the Presbyterian Church of the City of Savannah (whose name, by a subsequent act of the 16th of May, 1821, has been changed to that by which they are called in the will), provides, in sect. 2, that they " and their successors in office shall be invested with all manner of property, real and personal, all moneys due and to grow due, donations, gifts, grants, privileges, and immunities whatsoever, which shall or may belong to said Presbyterian Church at the time of the passing of this act, or which shall or may at any time or times hereafter be granted, given, conveyed, or transferred to them, or their successors in office, to have and to hold the same to the said trustees, and their successors in office, to the only proper use, benefit, and behoof of the said church forever; " in sect. 4, that " nothing herein contained shall be construed to vest in the said trustees any right or title to any estate or property whatsoever, real or personal, other than such as doth, or may rightfully and lawfully, belong to the said Presbyterian Church, or congregation, hereby made a body corporate; " and in sect. 5, that " it shall not be lawful for said trustees, or their successors in office, at any time or times hereafter, to grant, bargain, sell, alien, or convey any real estate whatsoever, belonging to the said church, to any person or persons, under any pretence or upon any consideration whatsoever, so as to dispose of the fee-simple thereof."

It is objected that this corporation is not empowered under its charter to accept and administer this charity. But it is a novel proposition, as inconsistent with the rules of law as it is with the dictates of religion, that a Christian church or religious society cannot receive and distribute money to poor churches of its own denomination so as to promote the cause of religion in the State in which it is established.

To hold this gift to be too indefinite and uncertain would be to disregard the elementary principles of the law of charitable uses. The appropriation of a certain sum annually to one or more churches of a certain denomination in such destitute and needy localities as the trustees may select, so as to promote the cause of religion among the poor and feeble churches of the State, describes the general nature of the charitable purpose,

while leaving the selection of the particular objects to the trustees, and is a good charitable use, sufficiently defined. *Bartlet* v. *King*, 12 Mass. 537 ; *Going* v. *Emery*, 16 Pick. (Mass.) 107 ; *North Adams Universalist Society* v. *Fitch*, 8 Gray (Mass.), 421.

The other objections to the validity of this devise are equally unavailing. The condition that no material alteration or change, but only proper repairs and improvements, shall be made in the pulpit or galleries of the present church (even if illegal, which we see no reason for supposing), is a condition subsequent, relating to the care and use of the property after the gift shall have vested in the devisee, and cannot therefore affect the original validity of the gift.

The condition that the trustees shall not alienate the land on which the school-room stands is also a condition subsequent, and is in accordance with the fifth section of their charter, and with the general law upon the subject. It will not prevent a court of chancery from permitting, in case of necessity arising from unforeseen change of circumstances, the sale of the land and the application of the proceeds to the purposes of the trust. Tudor on Charitable Trusts (2d ed.) 298 ; *Stanley* v. *Colt*, 5 Wall. 119, 169.

The condition as to the care and keeping of the tomb or burial-place of the testatrix is likewise a condition subsequent, and, even if invalid, would not defeat the charitable gift. *Giles* v. *Boston Fatherless & Widows' Society*, 10 Allen (Mass.), 355. In England there has been a difference of opinion upon the question whether the maintenance and repair of the tomb or monument of the donor is a good charitable use. Down to the time of the American Revolution, as by the civil law, it appears to have been held that it was. 3 Inst. 202 ; *Masters* v. *Masters*, 1 P. Wms. 421, 423, and note ; *Durour* v. *Motteux*, 1 Ves. Sen. 320 ; *Gravenor* v. *Hallum*, Ambl. 643 ; Boyle on Charities, 45–51 ; Justinian's Institutes, lib. 2, tit. 1, sects. 8, 9 ; Dig. 11, 7, 2, 5 ; 47, 12, 3, 2. According to the later English cases, it is not. *Doe* v. *Pitcher*, 3 M. & S. 407 ; *Same* v. *Same*, 6 Taunt. 359 ; s. c. 2 Marsh. 61 ; *Willis* v. *Brown*, 2 Jur. 987 ; *Hoare* v. *Osborne*, Law Rep. 1 Eq. 585 ; *Fiske* v. *Attorney-General*, Law Rep. 4 Eq. 521 ; *In re Birkett*, 9 Ch. D. 576. See

also *Dexter* v. *Gardner*, 7 Allen (Mass.), 243, 247. But it is unnecessary to examine and weigh these conflicting authorities, or to determine whether the devise of the burial-place of the testatrix, and the direction to keep it in good order, could be upheld in the absence of local statute, because they are clearly valid under the Code of Georgia, which enumerates among charitable uses " the improvement or repair of burying-grounds or tombstones." Code of Georgia of 1873, sect. 3157, cl. 7.

The eleventh clause of the will contains a devise to the Union Society of Savannah of a parcel of land in that city, with the buildings and improvements thereon, " but on the express condition that said society shall not sell or alienate said lot, but shall use and appropriate the rents and profits of the same for the support of the school and charities of said institution, without said lot being at any time liable for the debts or contracts of said society." The Union Society was incorporated by a statute of the 14th of August, 1786, " for the relief of distressed widows and the schooling and maintaining of poor children."

The twelfth clause devises to the Widows' Society of Savannah another parcel of land in that city, " on which the improvements now consist of four brick tenement buildings, the rents and profits of the same to be appropriated to the benevolent purposes of said society, but this devise is made on condition the said Savannah Widows' Society shall not sell or alienate said lot or improvements, nor hold the same subject to the debts, contracts, or liabilities of said society." The Widows' Society was incorporated, as stated in the title and repeated in the body of its charter granted in 1837, " for the relief of indigent widows and orphans in the City of Savannah."

" The relief of aged, impotent, and poor persons " is within the very words of the Statute of 43 Eliz. c. 4, sect. 1, and of the Code of Georgia of 1873, sect. 3157; and all educational purposes are within the terms of that code, and within the scope and principle of the Statute of Elizabeth. *Russell* v. *Allen*, *ante*, p. 163. The fact that the gift to the Widows' Society is directed " to be appropriated to the benevolent purposes of said society " does not affect its validity, because the charter of the society shows that all its purposes are charitable,

in the legal sense. It is only when a gift might be applied to benevolent purposes which are not charitable in that sense, that the gift fails. *Saltonstall* v. *Sanders*, 11 Allen (Mass.), 446; *Suter* v. *Hilliard*, 132 Mass. 412; *De Camp* v. *Dobbins*, 29 N. J. Eq. 36; *Adye* v. *Smith*, 44 Conn. 60; *In re Jarman's Estate*, 8 Ch. D. 584. The conditions subsequent have no greater effect than the corresponding conditions in the tenth clause, already considered.

The next clause of the will contains a provision applicable to the tenth, eleventh, and twelfth clauses, and is as follows: —

" Thirteenth. Should either one or more of the corporate bodies or institutions named in the preceding items of my will attempt to sell, alienate, or otherwise dispose of the property and estate therein devised, contrary to the terms and conditions therein set forth, or should there be any levy on the same to satisfy the debts of said corporation, then I hereby direct my executors or legal representatives to repossess and enter upon said property or estate as to which the conditions may be so broken or violated, and in that event I do hereby give and devise the said property so entered upon and repossessed unto the Savannah Female Orphan Asylum."

There is nothing in this clause by which the heirs at law or next of kin can be benefited, in any possible view. If the conditions against voluntary alienation and levy of execution are invalid, the previous devises stand good. If those conditions are valid, the devise over to the Savannah Female Orphan Asylum, an undoubted charity, will take effect; for as the estate is no more perpetual in two successive charities than in one charity, and as the rule against perpetuities does not apply to charities, it follows that if a gift is made to one charity in the first instance, and then over to another charity upon the happening of a contingency which may or may not take place within the limit of that rule, the limitation over to the second charity is good. *Christ's Hospital* v. *Grainger*, 16 Sim. 83, 100; 1 Macn. & Gord. 460; 1 Hall & Twells, 533; *McDonogh* v. *Murdoch*, 15 How. 367, 412, 415; *Russell* v. *Allen*, *ante*, p. 163.

The fourteenth clause of the will contains a devise and be-

quest to the Georgia Historical Society to establish a public library and museum, and is as follows : —

"Fourteenth. I hereby give, devise, and bequeath to the Georgia Historical Society and its successors all that lot or parcel of land, with the buildings and improvements thereon, fronting on St. James Square, in the City of Savannah, and running back to Jefferson Street, known in the plan of said city as lot letter N, Heathcote Ward, the same having been for many years past the residence of my family, together with all my books, papers, documents, pictures, statuary, and works of art, or having relation to art or science, and all the furniture of every description in the dwelling-house and on the premises (except bedding and table service, such as china, crockery, glass, cutlery, silver, plate, and linen), and all fixtures and attachments to the same ; to have and to hold the said lot and improvements, books, pictures, statuary, furniture, and fixtures to the said Georgia Historical Society and its successors, in special trust, to keep and preserve the same as a public edifice for a library and academy of arts and sciences, in which the books, pictures, and works of art herein bequeathed, and such others as may be purchased out of the income, rents, and profits of the bequest hereinafter made for that purpose, shall be permanently kept and cared for, to be open for the use of the public on such terms and under such reasonable regulations as the said Georgia Historical Society may from time to time prescribe ; but this devise and bequest is made upon condition that the Georgia Historical Society shall cause to be placed and kept, over and against the front porch or entrance of the main building on said lot, a marble slab or tablet, on which shall be cut or engraved the following words, to wit : TELFAIR ACADEMY OF ARTS AND SCIENCES, the word 'Telfair' being in larger letters and occupying a separate line above the other words ; and on the further condition that no part of the buildings shall ever be occupied as a private residence or rented out for money, and none but a janitor and such other persons as may be employed to manage and take care of the premises shall occupy or reside in or upon the same, and that no part of the same shall be used for public meetings or exhibitions, or for eating, drinking, or smoking, and that no part of the lot or improvements shall ever be sold, alienated, or encumbered, but the same shall be preserved for the purposes herein set forth. And it is my wish that whenever the walls of the building shall require renovating by paint or otherwise, the present color and design shall be adhered to as far as

practicable. For the purpose of providing more effectually for the accomplishments of the objects contemplated in this item or clause of my will, I hereby give, devise, and bequeath to the Georgia Historical Society and its successors one thousand shares of the capital stock of the Augusta and Savannah Railroad of the State of Georgia, in special trust, to apply the dividends, income, rents, and profits arising from the same, to the repairs and maintenance of said buildings and premises, and the payment of all expenses attendant upon the management and care of the institution herein provided for, and then to apply the remaining income, rents, and profits in adding to the library, and such works of art and science as the proper officers of the Georgia Historical Society may select, and in the preservation and proper use of the same, so as to carry into effect in good faith the objects of this devise and bequest."

The Georgia Historical Society was incorporated by a statute of the 19th of December, 1839, the preamble of which recites that "the members of a society instituted in the City of Savannah for the purpose of collecting, preserving, and diffusing information relating to the history of the State of Georgia in particular, and of American history generally, have applied for an act of incorporation." The first section makes them a corporation with the usual powers, and especially "to purchase, take, receive, hold, and enjoy, to them and their successors, any goods and chattels, lands and tenements, and to sell, lease, or otherwise dispose of the same, or any part thereof, at their will and pleasure : *Provided*, that the clear annual income of such real and personal estate shall not exceed the sum of five thousand dollars : *And provided*, *also*, that the funds of the said corporation shall be used and appropriated to the purposes stated in the preamble of this act, and those only." And the fourth section declares that the act of incorporation shall be a public act, " and shall be construed benignly and favorably for every beneficial purpose therein intended."

It is stated in the bill, and admitted by the demurrer, that the net income of the Georgia Historical Society from property held by it at the time of the death of the testatrix was between $3,000 and $4,000, and that the income of the property now bequeathed to it will add $7,000 to that income. It is argued for the appellants that because the effect

of the gift will be to increase the property of the corporation to double the amount which the corporation is allowed by the proviso in the first section of its charter to hold, the whole gift is void.

But there are two conclusive answers to this argument: 1st. Restrictions imposed by the charter of a corporation upon the amount of property that it may hold cannot be taken advantage of collaterally by private persons, but only in a direct proceeding by the State which created it. *Runyan* v. *Coster*, 14 Pet. 122, 131; *Smith* v. *Sheeley*, 12 Wall. 358, 361; *Bogardus* v. *Trinity Church*, 4 Sandf. (N. Y.) Ch. 633, 758; *De Camp* v. *Dobbins*, 29 N. J. Eq. 36; *Davis* v. *Old Colony Railroad Co.*, 131 Mass. 258, 273.

2d. By an act of amendment of the 28th of October, 1870, the provisos in the first section of the original charter are repealed. It is contended that the act of 1870 is unconstitutional and void, as being a grant by the legislature of corporate powers and privileges, in contravention of this provision in the Constitution of the State: " The General Assembly shall have no power to grant corporate powers and privileges to private companies, except to banking, insurance, railroad, canal, navigation, mining, express, lumber, manufacturing, and telegraph companies; nor to make or change election precincts; nor to establish bridges or ferries; nor to change names or legitimate children; but it shall prescribe by law the manner in which such powers shall be exercised by the courts." Constitution of Georgia of 1868, art. 3, sect. 6, § 5; Code of 1873, sect. 5068. But the words " corporate powers and privileges," as here used, signify the corporate franchise, the aggregate powers and privileges which constitute a corporation, not every separate power and privilege which may be conferred upon a corporate body. The object is to take away from the legislature, and to vest in the courts, under its direction, for the future, the creation of private corporations for literary, religious, charitable, or other purposes, except those specially excepted; but not to prevent the legislature from amending the charters of corporations already existing, and modifying or enlarging their powers, either by repealing former restrictions or otherwise. The act of 1870 is therefore constitutional and valid.

That a devise and bequest "to keep and preserve as a public edifice " a house containing a library and an academy or museum of works of art and science, "to be open for the use of the public " on such terms and under such reasonable regulations as the trustees may from time to time prescribe, is a valid charity, cannot be doubted. *British Museum* v. *White*, 2 Sim. & Stu. 594 ; *Drury* v. *Natick*, 10 Allen (Mass.), 169 ; *Donohugh's Appeal*, 86 Pa. St. 306.   The directions tending to perpetuate the memory of the founder do not impair its public character or its legal validity.   In the cases of *Thomson* v. *Shakespeare*, H. R. V. Johns. 612, and 1 D., F. & J. 399, and of *Carne* v. *Long*, 2 id. 75, on which the appellants rely, the gifts failed because not exclusively devoted to a public charitable use, the definition in the one case including purposes that might not be charitable, and the bequest in the other being to a private library established for the benefit of the subscribers alone.   See *Beaumont* v. *Oliveira*, Law Rep. 4 Ch. 309, 314, 315.

A corporation may hold and execute a trust for charitable objects in accord with or tending to promote the purposes of its creation, although such as it might not, by its charter or by general laws, have authority itself to establish or to spend its corporate funds for.   A city, for instance, may take a devise in trust to maintain a college, an orphan school, or an asylum. *Vidal* v. *Girard*, 2 How. 127 ; *McDonogh* v. *Murdoch*, 15 id. 367 ; *Perin* v. *Carey*, 24 id. 465.   There is some ground for holding that the objects of a historical society would be promoted by administering a devise and bequest to maintain for the public instruction and benefit a house containing a collection of books, documents, and works of art, with other such books and works to be selected by the officers of the society and purchased out of the surplus income ; and that the purposes of the trust are, in the words of Mr. Justice Story in *Vidal* v. *Girard*, 2 id. 189, " germane to the objects of the incorporation," and "relate to matters which will promote, and aid, and perfect those objects."

But if any doubt remains of the capacity of the Georgia Historical Society to assume and execute those charitable trusts, it would be within the ordinary jurisdiction of a court

of equity to appoint other trustees in its stead, according to the maxim, expressly affirmed in the Code of Georgia, that a trust shall never fail for the want of a trustee. *Reeve* v. *Attorney-General*, 3 Hare, 191; *Winslow* v. *Cummings*, 3 Cush. (Mass.) 358; Code of Georgia of 1873, sect. 3195.

The residuary clause of the will disposes of real and personal estate to the amount of $300,000, and is as follows: —

" Twenty-first. All the residue of my estate, of whatever the same may consist, real, personal, and mixed, and wherever situated, I hereby give, devise, and bequeath to my executors hereinafter named, and to the survivor of them, and to the successors in this trust of said survivor, in trust, to use and appropriate the proceeds arising from the same to the building and erection and endowment of a hospital for females within the City of Savannah, on a permanent basis, into which sick and indigent females are to be admitted and cared for in such manner and on such terms as may be defined and prescribed by the trustees or directresses provided for in this item or clause in my will. The income, rents, and profits of such portion of the residuum of my estate as may not be expended in the building, erection, and furnishing said hospital shall be annually appropriated to the support and maintenance of the same. My desire and request is that a thoroughly convenient hospital, of moderate dimensions, suited to the wants of the City of Savannah, and capable of enlargement if necessity should require, may be built and erected, with no unnecessary display connected with it. And I do hereby nominate, as the first trustees, managers, or directresses of said hospital, Mrs. Louisa F. Gilmer, Sarah Owens, Mary Elliott (formerly Habersham), Susan Mann, Florence Bourquin, Eva West, and Eliza Chisolm, all of Savannah, Georgia, and do request and instruct my executors to advise and consult with the ladies named as to the construction, arrangement, and furnishing of said hospital. It is further my wish and desire, and I do hereby request, that a suitable and proper act of incorporation for said hospital shall be obtained from such tribunal in the State of Georgia as may have jurisdiction in the premises, to be called and known as the ' Telfair Hospital for Females,' with the ladies above named, or such of them as may consent to serve, and such others as they may apply for to be associated with them, as the first trustees, managers, or directresses under said act of incorporation, with power to fill any vacancies that occur in their number. And for the purpose of accomplishing the objects contemplated in this item or clause of my

will, I do hereby authorize and empower my executors, or the survivor of them, to sell and convey all or any portion of the real estate, or any interest in the same, which I may have or be entitled to, and not given or devised in any of the previous items or clauses of this my will, using their discretion as to private or public sales, and as to whether and at what time such sales shall be made."

That this devise and bequest to establish a hospital for sick and indigent females in the City of Savannah is sufficiently definite, and that its validity is not impaired by the provision of the will requiring an act of incorporation to be obtained, are clearly settled by the cases of *Inglis* v. *Sailor's Snug Harbor*, 3 Pet. 99; *Ould* v. *Washington Hospital*, 95 U. S. 303; and *Russell* v. *Allen, ante,* p. 163.

The bequest, in the twenty-third clause of the will, of $1,000 " to the first Christian church erected or to be erected in the village of Telfairville in Burke County, or to such persons as may become trustees of the same," is supported by the same authorities, and is directly within the decisions of Lord Thurlow in *Attorney-General* v. *Bishop of Chester*, 1 Bro. Ch. 444, of Sir John Copley, Master of the Rolls (afterwards Lord Lyndhurst), in *Society for the Propagation of the Gospel* v. *Attorney-General*, 3 Russ. 142, and of Lord Hatherley in *Sinnett* v. *Herbert*, Law Rep. 7 Ch. 232. See also *Cumming* v. *Reid Memorial Church*, 64 Ga. 105.

The result is that all the devises and bequests contained in Miss Telfair's will are valid as against her heirs at law and next of kin.

*Decree affirmed.*