BRIGHAM v. PETER BENT BRIGHAM HOSPITAL et al.

(Circuit Court, D. Massachusetts.  December 30, 1903.)

No. 1,620.

1. GIFTS—VALIDITY—WHAT LAW GOVERNS.
     The validity of a charitable gift in a will depends on the law of the state where the testator was domiciled, and the lands devised are situated.

2. SAME—CHARITIES—ACCUMULATIONS—PERPETUITIES.
     Provisions of a will directing accumulations for charitable objects for a period longer than that allowed by the rule against perpetuities are valid.

3. SAME—CHARITABLE TRUST—EXISTENCE OF BENEFICIARY.
     A gift in trust for a charity not existing at the date of the gift, and the beginning of whose existence is uncertain or contingent, is valid, notwithstanding the contingency may not happen within a life or lives in being and 21 years, provided there is no gift of the property in the meantime for the benefit of any private person or corporation.

4. SAME—VESTED GIFT.
     Where testator's intention to make a gift to a charity is absolute, and the gift and constitution of the trust are immediate, and the only thing postponed is the particular form or mode of the charity to which the testator wishes the property to be applied, the gift is vested, and not contingent, and therefore not within the rule against perpetuities.

5. SAME—WILLS—CONSTRUCTION.
     Where testator devised the residue of his estate to his executors in trust, and directed them, after paying certain specific legacies, to transfer the residue to a corporation which they were to form for the purpose of administering a charity, and there was nothing undisposed of, or any resulting trust in favor of the heirs or next of kin, the charity vested immediately on testator's death, and was not conditional on the formation of the hospital corporation.

6. SAME.
     Where testator devised all the residue of his estate in trust to invest and pay certain annuities, and provided that unexpended balances after the satisfaction of the annuities and legacies at the expiration of 25 years should be transferred to a certain hospital corporation to be created, to which the residue of the estate was devised, the residuary estate was not thereby made a unit for the benefit of the individuals until their estate terminated, and then remainder to the charity, but should be construed to require payment of the annuities and legacies first out of the fund, the remainder of which should be paid to the charity; and hence there was no preceding gift or perpetuity in the first taker, so as to invalidate the charity.

7. SAME—CHARITABLE CORPORATIONS—GIFTS—AMOUNT.
     A limitation in the charter of a corporation as to the amount of property it may hold is for the benefit of the general public, represented by the state; and hence the heirs or next of kin of a testator cannot object to a devise to a charitable corporation on the ground that it will increase the devisee's property beyond the limits prescribed in its charter.

8. SAME—STATES—ESTOPPEL.
     Where a state passed a special act authorizing a particular charitable hospital to hold real and personal property to an amount not exceeding $5,000,000, it was thereby estopped to object to the corporation holding property devised to it, not exceeding such limit.

     ¶ 2. See Perpetuities, vol. 39, Cent. Dig. § 65.'

     ¶ 8. Estoppel as against state or United States, see note to State of Michigan v. Jackson, L. & S. R. Co., 16 C. C. A. 353.

In Equity.

Charles A. Snow, for complainant.

Lewis S. Dabney and Arthur I. Hill, for defendant hospital.

J. S. Thorndike, for defendants E. I. Codman and H. H. Johnson.

COLT, Circuit Judge. This bill is brought by one of the heirs at law and next of kin of Peter B. Brigham, who died May 24, 1877, leaving a will, which was duly admitted to probate October 17, 1877. By the fourteenth clause of his will, the testator gives his entire residuary estate, subject to the payment of certain annuities and legacies, to his executors in trust for the purpose of founding a hospital in Boston, to be called the Brigham Hospital, for the care of sick persons in indigent circumstances residing in the county of Suffolk. The executors were directed to hold the estate for purposes of accumulation for a term of 25 years, and at the expiration of that period to procure the formation of a corporation for the administration of the charity, and turn over to the corporation the unexpended balance, after payment of the annuities and legacies.

The bill seeks to have the provisions of the will in favor of the hospital declared void on the ground that they conflict with the rule against perpetuities. If this ground proves untenable, it asks that these provisions be declared invalid as to any excess of property above $1,500,000, for the reason that no charitable corporation such as was contemplated by the testator had the capacity, under the laws of Massachusetts existing at the time the gift vested, to hold property above that amount. The case was heard on demurrers to the bill for want of equity.

Before a more specific reference to the provisions of the will, it is important to call attention to some general principles which have an important bearing on the paramount issue raised by the bill.

The validity of this charitable gift depends upon the law of Massachusetts, where it appears the testator was domiciled and the lands situated. Jones v. Habersham, 107 U. S. 174, 179, 2 Sup. Ct. 336, 27 L. Ed. 401; Loring v. Marsh, 6 Wall. 337, 355, 18 L. Ed. 802.

Provisions in a will directing accumulations for charitable objects for a period longer than allowed by the rule against perpetuities are not invalid, and will be upheld. Odell v. Odell, 10 Allen, 1; St. Paul's Church v. Attorney General, 164 Mass. 188, 41 N. E. 231; Perry on Trusts, § 738.

A gift in trust for a charity not existing at the date of the gift, and the beginning of whose existence is uncertain, or which is to take effect upon a contingency that may possibly not happen within a life or lives in being and 21 years afterwards, is valid, provided there is no gift of the property meanwhile to or for the benefit of any private person or corporation. Odell v. Odell, 10 Allen, 1, 7; Russell v. Allen, 107 U. S. 171, 172, 2 Sup. Ct. 327, 27 L. Ed. 397; Jones v. Habersham, 107 U. S. 174, 2 Sup. Ct. 336, 27 L. Ed. 401; Ould v. Washington Hospital for Foundlings, 95 U. S. 303, 24 L. Ed. 450; Hayes v. Pratt, 147 U. S. 557, 13 Sup. Ct. 503, 37 L. Ed. 279; Inglis v. Sailor's Snug Harbour, 3 Pet. 99, 7 L. Ed. 617; Attorney General v. Bishop of Chester, 1 Bro. C. C. 444; Attorney General v. Lady

Downing, 1 Dick. 414, Ambl. 571; Attorney General v. Bowyer, 3 Ves. Jr. 714; Henshaw v. Atkinson, 3 Madd. 306; Sinnett v. Herbert, L. R. 7 Ch. Ap. Cas. 232; Chamberlayne v. Brockett, L. R. 8 Ch. Ap. Cas. 206; Re Gyde, Ward v. Little, 79 L. T. (N. S.) 261.

Where the intention in favor of charity is absolute, and the gift and constitution of the trust are immediate, and the only thing which is postponed or made dependent for its execution upon a future uncertainty is the particular form or mode of charity to which the testator wishes the property to be applied, the gift is vested, and not contingent. It is not subject to a condition precedent, and therefore it is not within the rule against perpetuities. The rule against perpetuities is a rule against remoteness, or the remote vesting of an estate, and where the estate vests immediately the rule has no application. Cases above cited—especially Chamberlayne v. Brockett, L. R. 8 Ch. Ap. Cas. 206, 212; Re Gyde, Ward v. Little, L. T. (N. S.) 261; also Gray's Rule against Perpetuities, §§ 607, 678.

The material portions of the fourteenth clause of the Brigham will are as follows:

"Fourteenth. All the rest and residue of my property and estate, of every kind and description, real, personal and mixed, of which I shall die seized or possessed, or to which I shall be entitled at the time of my decease, I direct my said Executors to take, hold, manage and invest, for the term of twenty-five years from the time of my decease, and to take the rents, interest, income and profits thereof and from the net income thereof to appropriate and pay as follows, that is to say:

"1. They shall pay to my sister, the said Sarah B. Jacobs, the sum of five hundred dollars in each and every month, during her natural life.

"2. They shall pay to my niece Sarah Jane Brigham Kendall the sum of two thousand dollars annually during her life, in equal quarter annual payments; and at her decease, they shall distribute the sum of thirty-two thousand dollars to and among her children or child, if any, who shall survive her. If she leave no child living at her decease, this legacy to her children shall lapse."

Paragraphs 3, 4, 5, 6, and 7 contain bequests similar to paragraph 2. Then follow these provisions:

"My said Executors shall add the balance of said net income, that shall remain after making the payments aforesaid, to the principal of my said estate, so that the same may be accumulating for the term of twenty-five years aforesaid; and at the expiration of said term of twenty-five years from my decease, my said Executors shall set aside a sum or sums of money and may deposit the same in some safe trust company—preference being given, other things being equal, to the Massachusetts Hospital Life Insurance Company, of said Boston—which shall be sufficient to provide for the payment of such of the foregoing legacies and bequests, if any, as shall then be unfulfilled; or may provide for the payment of such unpaid legacies and bequests by the purchase of annuities for the unpaid legatees or otherwise, as my said Executors shall deem expedient; & after the payment, or provision for the payment, as aforesaid of all the foregoing bequests and legacies, the unexpended balances, if any, shall be paid to and for the use of the hospital hereinafter provided for.

"8. At the expiration of said term of twenty-five years from the time of my decease, my said Executors shall dispose of said rest and residue of my property and estate and of all the interest and accumulations which shall have accrued thereon, for the purpose of founding a hospital in said Boston, to be called the Brigham Hospital for the care of sick persons, in indigent circumstances, residing in the said county of Suffolk, in the following manner,—that is to say: They shall procure the formation of a Corporation, to be called the

'Brigham Hospital' with suitable provisions as to officers, their powers and duties for control, direction, conduct and administration of the Corporation and the care and management of the funds in its charge; and upon the legal formation and organization of said Corporation, my said Executors shall transfer to it all the property and estate provided for it as aforesaid, to be by it used and employed for the purposes above declared:—and I give, devise and bequeath said rest and residue of my property and estate accordingly."

The reading of these provisions leaves no doubt as to the intention of the testator. His purpose is to found a hospital in the city of Boston for the benefit of sick persons in indigent circumstances. He executes this purpose by devising the property to his executors in trust, and directing them, after making certain specific payments, to transfer the residue to a corporation bearing his name, which they are to form for the purpose of administering the charity. There is nothing which is undisposed of. There is no resulting trust in favor of the heirs or next of kin. The property is not given over to them upon any contingency or the happening of any event. Since the testator intended to dedicate to charity the entire balance of his estate, after satisfying the annuities and legacies, it is the duty of the court to carry out this intention, if consistent with the rules of law.

The clause ends with the words, "I give, devise and bequeath said rest and residue of my property and estate accordingly." These words, read in the light of the whole clause, and especially of the first paragraph, show a direct and absolute gift to charity of the entire residue of the estate after making certain payments. The trust for charitable purposes is constituted immediately upon the death of the testator, and is not conditional upon the formation of the hospital. The testator meant that the beneficial interest in the original fund, and in the accumulations as they accrued, which were not otherwise disposed of, should vest at once in the charity. The directions as to the hospital are simply the mode or instrument or machinery adopted by him to carry into effect his charitable purpose. The formation of the corporation was not a condition precedent to the constitution of the gift, under well-settled law. The gift will be upheld, although the corporation may never be created. Crerar v. Williams, 145 Ill. 625, 648, 649, 34 N. E. 467, 21 L. R. A. 454, and cases already cited.

If the gift vested immediately, the rule against perpetuities has no application. It is contended, however, that this is not the true construction of the will; that the language of the fourteenth clause, properly interpreted, means that the gift does not vest or take effect until the formation of the corporation, and the transfer of the property to it. In view of this contention, it becomes important to examine the grounds upon which the validity of the gift is questioned on the theory that it does not vest until the expiration of 25 years, or within the time prescribed by the rule against perpetuities. These objections to the provisions of the fourteenth clause may be considered under several heads:

(1) The will directs accumulations for a term of 25 years. The answer to this objection is that it has been authoritatively adjudicated in Massachusetts, as we have already pointed out, that provisions in a will directing accumulations for a charitable object for a period longer than permitted by the rule against perpetuities are not invalid.

(2) The charity contemplated by the will was not in existence at the decease of the testator or the date of the gift. It is unnecessary, however, to cite authorities in support of the proposition that charitable gifts to nonexistent corporations or societies are not within the rule against perpetuities.

(3) In the Brigham will, not only is the gift directed to be paid over to a corporation not in esse, but it is further provided that the corporation shall not be organized and the property transferred until the expiration of a term of 25 years. This provision plainly falls within the modification of the strict rule against perpetuities in favor of charitable gifts. The doctrine has long been recognized and enforced (except in a few jurisdictions, such as New York, where a restrictive policy prevails respecting charitable gifts), that a gift in trust to a charity is valid, although the charity may not exist at the date of the gift, or may possibly not come into existence within a life or lives in being and 21 years and 9 months thereafter, or may never come into existence, provided there is no gift of the property in the first instance, or perpetuity in a prior taker. The reason of this proviso, as explained by Chief Justice Gray in Odell v. Odell, is not because the charity could not lawfully take at the remote period, but because it tends to create a perpetuity in the first taker by making the estate inalienable by him beyond the period allowed by the rule against perpetuities. 10 Allen, 7. Since the exception to the rule in favor of charitable gifts includes gifts to corporations which may never come into existence, it manifestly embraces with much greater force a gift to a corporation which by direction of the testator is to be formed at the expiration of 25 years after his decease. There is little danger that this exception will lead to abuse by the postponement of the formation of the corporation for an indefinite period. It is within the power of the courts to declare that the organization of the corporation shall be effected within a reasonable time, or at least shall not be indefinitely postponed. Gray's Rule against Perpetuities, § 607; St. Paul's Church v. Attorney General, 164 Mass. 188, 41 N. E. 231.

(4) The will directs that the executors shall pay annuities to certain individuals, and legacies in gross to their children in the event of their leaving children surviving them; and it further provides that the "unexpended balances," after the satisfaction of these annuities and legacies, shall, at the expiration of 25 years, be transferred to the hospital. It is maintained that these provisions create an intermediate estate in a first taker; in other words, that this is a gift in trust to individuals, followed by a remote gift to charity, and so within the rule against perpetuities. The difficulty with this position lies in giving to the provisions of the will the construction which is here urged. The scheme of that instrument and the intention of the testator are plain and unmistakable. It would be doing violence to the language of the fourteenth clause to hold that the residuary estate is made a unit, and that it is first given to or for the benefit of certain individuals, and then over to a charity at the termination of 25 years. The will is not framed on any such plan, nor is its language fairly susceptible of such interpretation. On the contrary, it is clear that

the annuities and legacies are first to be paid out of the fund, and that the gift to charity is only of what remains after such payments. Upon any sound or reasonable construction of these provisions, there is no preceding gift or perpetuity in a first taker, and I fail to find in the able and exhaustive brief of complainant's counsel any case which supports his position, when applied to the language of the Brigham will.

It appears from the bill that on January 25, 1901, the defendants Codman and Johnson were duly appointed trustees under the will upon the death of the surviving executor; that on May 8, 1902, they procured the formation of a corporation called the Peter Bent Brigham Hospital; that on or about May 24, 1902, they turned over to the corporation the entire real and personal estate held by them as trustees, except certain amounts reserved for the payment of the annuities and legacies mentioned in the will; and that the value of the property so transferred was upwards of $4,000,000. It further appears that, under the laws of Massachusetts relating to the organization of charitable corporations which existed at the death of the testator, the capacity of such corporations to hold real and personal estate was limited to $500,000; that in 1897 (St. 1897, p. 71, c. 97) this limit was extended by statute to $1,500,000, and that on May 22, 1902 (St. 1902, p. 330, c. 418), a special act of the Legislature was passed, authorizing the hospital to hold real and personal estate to an amount not exceeding $5,000,000.

Upon this state of facts it is contended that the charitable gift, if otherwise valid, is void as to all the property in excess of $500,000 if the gift vested at the death of the testator, or in excess of $1,500,-000 if the gift vested at the expiration of 25 years from the death of the testator.

Whether a gift of property to a corporation is void as to any excess above its legal capacity to take, with a resulting trust as to such excess in favor of the heirs at law and next of kin, is a question upon which there exists a conflict of authority. The decisions of the state courts naturally reflect the public policy of the state in which they are located. In those jurisdictions where a restrictive policy respecting charitable gifts prevails, we find the rule that such gifts are void as to the excess of the chartered capacity of the corporation to take. In re McGraw's Estate, 111 N. Y. 66, 19 N. E. 233, 2 L. R. A. 387; Wood v. Hammond, 16 R. I. 98, 17 Atl. 324, 18 Atl. 198. In those jurisdictions in which a more liberal policy exists, the rule has been followed that such gifts can only be attacked by direct proceedings instituted in behalf of the state, and that they cannot be impeached in collateral suits brought by the heirs at law and next of kin. Farrington v. Putnam, 90 Me. 405, 37 Atl. 652, 38 L. R. A. 339; Hanson v. Little Sisters of the Poor of Baltimore, 79 Md. 434, 32 Atl. 1052, 32 L. R. A. 293; Hamsher v. Hamsher, 132 Ill. 273, 23 N. E. 1123, 8 L. R. A. 556. The Supreme Court of the United States has followed the latter rule. Jones v. Habersham, 107 U. S. 174, 2 Sup. Ct. 336, 27 L. Ed. 401. Since the courts of Massachusetts have always adhered to a liberal policy with respect to charitable gifts, it is not a violent assumption to say that they would

126 F.—51

follow the rule of the federal courts and of most of the states where the question has arisen. Sanderson v. White, 18 Pick. 328, 333, 334, 336, 29 Am. Dec. 591; American Academy of Arts and Sciences v. Harvard College, 12 Gray, 582, 595, 596.

As an original question, I agree with the conclusions reached by Chief Justice Peters in Farrington v. Putnam, upon an exhaustive examination of the question. The charter is a contract between the corporation and the state. The limitation in the charter of the amount of property it may hold is for the benefit of the general public, represented by the state, and not for the benefit of the heirs or next of kin of the testator or any particular persons. Any transgression of the contract by the corporation in accepting excessive devises or bequests is an offense only against the state, and in no sense an offense against the heirs of the testator or his next of kin. Such limitation is mainly a regulative and directory provision, and is only impliedly prohibitory; no penalties being attached thereto. Devises and bequests in excess of chartered capacity to hold property are voidable only, and whether they shall be declared void, or be permitted to remain as valid, is a question of policy or expediency, which the state must determine for itself. Such a question can only be determined in a direct proceeding originated by the state through its representative officers, and not by any collateral proceeding brought by or for the benefit of any individuals to set such provisions aside. 90 Me. 405, 37 Atl. 652, 38 L. R. A. 339.

For the purposes of the case at bar, however, it is sufficient that this identical question has been directly passed upon by the Supreme Court of the United States in Jones v. Habersham, 107 U. S. 174, 2 Sup. Ct. 336, 27 L. Ed. 401. That was a suit similar to this, in which the heirs at law and next of kin sought to have the provisions of a will adjudged void, and a resulting trust declared in their favor. It was heard on demurrer to the bill. It was stated in the bill, and argued by counsel, that the effect of the charitable gift would be to increase the property of the corporation to double the amount which it was allowed by its charter to hold, and that consequently the gift was void. In determining that question, Mr. Justice Gray, speaking for the court, said:

"But there are two conclusive answers to this argument: (1) Restrictions imposed by the charter of a corporation upon the amount of property that it may hold cannot be taken advantage of collaterally by private persons, but only in a direct proceeding by the state which created it."

This decision is conclusive upon this court, since no contrary rule exists in Massachusetts.

It may further be observed that the state of Massachusetts has waived any right to institute proceedings to declare this gift void, by the passage of the act of May 22, 1902.

For these reasons, the demurrers must be sustained, and the bill dismissed, and a decree may be drawn accordingly. Demurrers sustained. Bill dismissed.