WINBORNE, J., dissenting.
STACY, C. J., and BARNHILL, J., concur in dissent.
This is a proceeding brought by the trustees of a charitable trust, who operate a hospital in Tarboro, N.C. under the name and style of Edgecombe General Hospital, to secure court authority to borrow from the Jefferson Standard Life Insurance Company the sum of $40,000, on *Page 290 
certain terms, to execute a note or notes therefor, and to secure the payment of the note or notes by the execution and delivery of a mortgage or deed of trust on the hospital property. The purpose of the loan is to make certain additions and improvements to the present plant, particularly by the construction of a new building on the site now occupied by what is designated as the Nurses' Home, and also by the erection of a new building to be used as a Nurses' Home. The details of the plan are set forth in the findings of fact of the court below. The present hospital was first established in 1901 and has been operated continuously since that time by various trustees, individual and corporate. In 1928, the Edgecombe Hospital and Benevolent Association, Inc., conveyed the property to the present trustees, by deed dated 6 June, 1938, recorded in Book 288, page 300, Edgecombe County registry, which conveyed the property to the present trustees, as "trustees for the use and benefit of the citizens of the town of Tarboro, of the county of Edgecombe, and of the adjacent counties." Except for the conveying clause, description of the property and the attestation, the deed contained only the following, which is found in thehabendum clause: "To have and to hold the aforesaid real and personal property, together with all the privileges and appurtenances thereunto belonging or in anywise appertaining unto the said parties of the second part, their successors and assigns, for the purpose of owning, equipping, managing, maintaining and supporting a hospital for the care and treatment of the sick and the indigent or any others requiring medical or surgical aid, the dispensing of charity, distribution of funds for charitable and benevolent purposes and for such other and further acts as may be necessary to carry out the purposes aforesaid."
The plaintiffs set forth, and it was found by the court, that the present plant, especially the building designated as the Nurses' Home (which contains other departments as well as room for the nurses) is not safe for use, constitutes a fire hazard, and is not in condition to be so repaired as to render it reasonably adapted for further use. The plaintiffs have secured from the Jefferson Standard Life Insurance Company a commitment to make a loan of $40,000, to be secured by mortgage or deed of trust, and the plaintiffs propose to rebuild the plant as fully set forth. On the findings of fact the court below adjudged and decreed that the plaintiffs (trustees) be authorized to secure the proposed loan and execute necessary note or notes and a mortgage or deed of trust on the property. To this judgment the defendants excepted, assigned error and appealed to the Supreme Court. This exception and assignment of error and other necessary facts will be set forth in the opinion.
The questions involved in this controversy are: (1) Has the court, in the exercise of its equity jurisdiction, the power to authorize the trustees of a charitable trust to mortgage the trust property? (2) If so, do the facts in the case justify the exercise of that power? Under the facts and circumstances of this case, we think both the questions must be answered in the affirmative.
The findings of facts by the court below are set out in full in the record and we think are plenary to support the judgment. It is found that "Neither the deed which created the original trust nor any of the mesne
conveyances contain any restrictions upon the power of the grantee or grantees therein, to alienate or encumber the trust property."
This proceeding was brought for the purpose of obtaining court authority to borrow an amount not exceeding $40,000 from the Jefferson Standard Life Insurance Company and to execute a note or notes therefor, together with a mortgage or deed of trust on the property described in the petition. The total investment at this time of the Edgecombe General Hospital amounts to $60,000. In the findings of facts is the following: "The present plant of said institution consists of (1) the original brick building in which the hospital began operations in the year 1901, it being then a residence building of more than fifteen years of age; this building houses the home for nurses, the dining room, the kitchen, the deep-therapy X-ray department, and the heating plant; (2) a brick building connected with the above building which was constructed in the year 1916, at a cost of about $15,000, with funds raised by voluntary donations; this building contains thirteen private hospital rooms, four wards, two operating rooms, X-ray room, offices, etc.; (3) a brick building in the rear of the Nurses' Home, constructed in the year 1920, at a cost of about $15,000, with funds also raised by voluntary donations; this building contains rooms for colored people and is connected with both of the above-mentioned buildings. The building referred to above as the Nurses' Home, being old and dilapidated, is dangerous and unsafe, some of the outside walls are cracked from bottom to top in several places, the interior woodwork has rotted in many places, the electric wiring, the plumbing and heating pipes, connections and fixtures are worn out, and there exists a serious fire hazard on account of such conditions. This structure is unsafe and unfit for use in its present condition and on account of its age and plan of construction it is impracticable and economically inadvisable to remodel it for use as a part of a modern and well appointed hospital; and without this building or one erected in its place the petitioners will be unable to discharge the duties imposed upon them in a proper, reasonable and adequate manner. Because of the imperative need of replacing the aforesaid portion of the trust property and the further need of improving generally so as to *Page 292 
maintain it as an up-to-date hospital for the practice of modern medicine and surgery and equipped to provide and furnish the kind and measure of service contemplated by the trust have worked out and submitted to the court a plan of improvement and enlargement hereinafter set out in detail, which the court finds to be based upon sound economic considerations and one designed to accomplish the end in view and also to widen and enlarge the scope and field of petitioners' operations; as a part of this plan the petitioners on 9 July, 1938, acquired title to a parcel of land adjoining the parcel of land above referred to and on which the present hospital buildings are located, which was conveyed to the petitioners by deed in Book 366, page 368, Edgecombe County registry."
The details of the improvement and enlargement are set forth and the annual rental is found to be sufficient to operate the hospital and carry the loan. The entire buildings and furniture, fixtures and equipment to cost approximately $40,000.
The court below further found: "That the consummation of the above loan will be to the great, lasting and material advantage of all parties concerned, including the `sick and indigent, or all others requiring medical or surgical aid' in Edgecombe and adjacent counties; and that on the other hand, if authority to consummate said loan is withheld and petitioners are prevented from carrying out the proposed plan of improvement and enlargement the benefits accruing from the original trust property and subsequent donations will be presently materially limited and in the course of time entirely lost. The court further finds that in all reasonable probability the additional income to be derived from rental of office space and new private rooms will enable petitioners to meet the payments of interest and principal of the proposed loan and thereby eventually relieve the trust property of the proposed encumbrance."
In other words, the present buildings will decay and the human undertaking be lost to Edgecombe County and the surrounding section if the trustees are not given the power to place a lien on the property, the money to be spent in improvements. Of course, mortgaging is a hazardous venture, but few homes, industrial plants, railroads, or going concerns, are erected without resorting to a mortgage or deed of trust. Building and Loan Associations, mortgage corporations, insurance companies and other like concerns, as well as State and Federal agencies, are functioning for the purpose of loaning by way of mortgage and deed of trust. If we feared to plant seed corn or wheat, what would the harvest be? In this case the object is to take better care of the sick, indigent and afflicted. Lord Bacon, in his celebrated Essay, "Of Goodness and Goodness of Nature," says: "Goodness answers to the theological virtue charity, and admits no excess but error: the desire of power in excess caused the angels to fall; the desire of knowledge in *Page 293 
excess caused man to fall; but in charity there is no excess; neither can angel or man come into danger by it."
The trustees are unanimous in their request, the defendants in the answer admit, or do not deny, the plaintiffs' allegations. Further in the answer it is said: "The trustees have no right in law or equity to create debts against the property, and particularly have no such right to subject the trust property to liens. . . . That these defendants, while not questioning the good faith and purpose of the petitioners, deem it their duty on behalf of themselves and all other citizens of Edgecombe County, including the sick and indigent and others requiring medical or surgical aid, to present to the court the reasonable positions and contentions of all beneficiaries of the trust, namely, (1) that the court is without jurisdiction to grant the prayer of the petition; and (2) assuming the jurisdiction of the court in the premises, the authority requested in the petition should not be granted."
The deed to plaintiffs, trustees, in the habendum clause — last words — says, "For such other and further acts as may be necessary to carry out the purposes aforesaid." The trustees, who are primarily interested in preserving the trust, say that what they want done is necessary to carry out the charitable purposes of the trust. Where there is a charitable trust and the need is imperative to save that which will be lost, as under the facts and circumstances of this case, we can see no reason why a court of equity could not or should not grant the request.
In Holton v. Elliott, 193 N.C. 708 (710), we find: "The power is not infrequently exercised where conditions change and circumstances arise which make the alienation of the property, in whole or in part, necessary or beneficial to the administration of charity. The principle is very clearly upheld in Church v. Ange, 161 N.C. 315, in which it is said: `The language, the property "shall not be disposed of, sold or used in any other way or for other purpose than the one designated in this clause of my will," manifests an intention to effectuate the trust, and to permit a sale if the purpose declared, of providing a rectory, can be thereby promoted; but if this power to sell and reinvest in other land, suitable for a rectory, is not contemplated by the will, it is not forbidden, and under the statute, Revisal, sec. 2673 (N.C. Code, 1935 [Michie], sec. 3571), the plaintiffs can sell. If, however, this was doubtful, the sale in this case has the sanction of the Court, the courts of equity have long exercised the jurisdiction to sell property devised for charitable uses, where, on account of changed conditions, the charity would fail or its usefulness would be materially impaired without a sale. Lockland v. Walker, 52 N.W. (Mo.), 427; Brown v. Baptist Society, 9 R. I., 184; Stanly v. Colt,72 U.S. 119; Jones v. Habersham, 107 U.S. 183. In the last case, the Court said of an express provision against alienation: *Page 294 
"It will not prevent a court of chancery from permitting, in case of necessity arising from unforeseen change of circumstances, the sale of the land and the application of the proceeds to the purpose of the trust. Tudor on Charitable Trusts (2 Ed.), 298; Stanly v. Colt, 5 Wall., 119, 169."'"
In Bogart on Trusts and Trustees, Vol. 4, p. 2238, part sec. 757, is the following: "The courts are particularly interested in preserving the trust assets so that the primary object of the trust can be accomplished, and to that end have in some cases implied the power to mortgage to avoid the sacrifice of trust property," citing authorities.
In Scott on Trusts (1939), Vol. 2, p. 839, part sec. 167, it is stated: "In cases of emergency in order to prevent a sacrifice of the trust property the court may permit the trustee to mortgage or pledge the property, even though he may be forbidden by the terms of the trust to do so."
In American Law of Charities (Zollmann), speaking to the subject, we find, sec. 580, p. 405: "Under a gift to trustees for a hospital, the trustees have been authorized by the court to give a mortgage on the property in order to raise the money necessary for its best interest."
To the same effect, to improve the property in order more fully to carry out the purposes of the trust — Scott v. Mussafer, 134 So. 857,223 Ala. 153; Christian v. Worsham, 78 Va. 100; Frith v. Cameron, L. R., 12 Eq., 169. The right is given a court of equity to permit the trustee to mortgage the trust estate.
In Curtiss v. Brown, 29 Ill. 201 (230), it is written: "Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency. . . . From very necessity a power must exist somewhere in the community to grant relief in such cases of absolute necessity, and under our system of jurisprudence, that power is vested in the court of chancery."
In Reynolds v. Reynolds, 208 N.C. 578 (631), speaking to the subject, it is said: "Frequently, on changed conditions, equity steps in and gives relief."
For the reasons given, the judgment of the court below is
Affirmed.